# IN THE COURT OF APPEALS 01/28/97

# OF THE

# STATE OF MISSISSIPPI

## NO. 93-KA-00679 COA


PATRICK DUDLEY WHITFIELD

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE


THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B


TRIAL JUDGE: HON. KOSTA N. VLAHOS

COURT FROM WHICH APPEALED: CIRCUIT COURT OF HANCOCK COUNTY

ATTORNEY FOR APPELLANT:

WILLIAM L. DUCKER

ATTORNEY FOR APPELLEE:

OFFICE OF THE ATTORNEY GENERAL

BY: JEAN SMITH VAUGHAN

DISTRICT ATTORNEY: CHARLES WOOD

NATURE OF THE CASE: CRIMINAL--ARMED ROBBERY, RAPE, AND SEXUAL BATTERY

TRIAL COURT DISPOSITION: CONVICTED OF ALL THREE COUNTS AND SENTENCED
TO THE FOLLOWING TERMS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF
CORRECTIONS: TWENTY YEARS FOR ARMED ROBBERY; LIFE IMPRISONMENT FOR
RAPE; AND TEN YEARS FOR SEXUAL BATTERY; ALL OF WHICH TERMS ARE TO RUN

CONSECUTIVELY

MANDATE ISSUED: 7/3/97

BEFORE BRIDGES, P.J., COLEMAN, AND DIAZ, JJ.

COLEMAN, J., FOR THE COURT:

A jury in the Circuit Court of Hancock County convicted Patrick Dudley Whitfield of three felonies: armed robbery, rape and sexual battery. For these convictions, the trial judge sentenced him to serve terms of twenty years for armed robbery, life for rape in accordance with the jury's imposition of that sentence, and ten years for sexual battery in the custody of the Mississippi Department of Corrections, all three of which terms were to run consecutively. This Court finds no error and accordingly affirm's the trial court's judgment of Whitfield's guilt and sentences imposed upon him.

## I. Facts

At approximately 6:05 o'clock in the afternoon of May 15, 1991, Patrick Dudley Whitfield entered Todd's Food Mart, a convenience store located on Highway 603 near Interstate 10 in Hancock County. Once inside Whitfield pointed a pistol at T. C., the store manager, who was talking to her sixteen-year-old son over the telephone, and demanded that she give him all of the money in the store's cash register. After T. C. said an instant "goodbye" to her son and handed over to Whitfield the contents of the cash register, which was approximately $700, Whitfield ordered her first to enter the store's walk-in freezer. As they walked toward the freezer, Whitfield, who continued to aim the pistol at T. C., changed his mind and ordered her to enter the back room of the store, in which was located a kitchen and a bathroom.

Once T. C. had entered the back room, Whitfield ordered her at gunpoint to undress, which she did, and then to enter the bathroom with him. Inside the bathroom, Whitfield continued to point the pistol at T. C. and ordered her first to commit fellatio on him and then to engage in sexual intercourse with him. As he initiated the act of sexual intercourse, Whitfield laid the pistol on the lavatory in the bathroom. When he did this, T. C. "kind of inched back where [she] could get her hands on the gun." When she got her hands on the pistol, she stood straight up, put the pistol in Whitfield's stomach, and tried to pull the trigger. A struggle ensued between them, and T. C. managed to escape from the bathroom after she pushed Whitfield against the wall as he was pulling up his underwear.

T. C., still undressed, ran out of the store onto Highway 603 and hailed a red pickup traveling on that highway toward Waveland in which a man and woman were riding and asked them to follow the blue station wagon which Whitfield was just then driving out of the store's parking lot. She then ran back into the store, grabbed a T shirt from the rack, put it on, and dialed 911 to report that she had been robbed and raped. She described her attacker as a white male, five feet, nine-inches tall, with sandy blond hair, weighing "may be two hundred pounds," wearing blue shorts and a light colored shirt. She told the 911 operator that her assailant was driving a blue station wagon. A three-camera video monitor/security system had captured Whitfield pulling out his pistol and pointing it at T. C. The pistol proved to be a pellet, or "BB", pistol which Whitfield testified he had stolen earlier that day

from the WalMart store in Picayune. Although the pistol required a $CO_2$ cartridge to fire a pellet, this pistol did not have one installed in it.

At approximately 6:15 p.m. Murty Hearty, the dispatcher at the Hancock County Sheriff's office and the 911 operator, received T. C.'s telephone call during which T. C. reported the robbery and rape incident at Todd's Food Mart. While she kept T. C. on the telephone, Hearty dispatched one unit to Todd's Food Mart and then advised the other of the sheriff's department's units that the blue station wagon was traveling southbound on Highway 603. She repeated T. C.'s description of Whitfield as the driver of the vehicle. Brett Ladner, a police officer employed by the Waveland Police Department, spotted the blue station wagon traveling on Old Nicholson Road in or near Bay St. Louis, began following it, and pulled the vehicle over. After Ladner arrested Whitfield, a roll of paper money in the amount of $559 was found stuffed between the front seats of the station wagon. The sheriff's department investigators who arrived at Todd's Food Mart located $150 on the floor of the store that Whitfield had dropped as he ran from the store. After Whitfield was taken to the sheriff's department, he was given an intoxilizer test, the result of which indicated that Whitfield's blood alcohol count measured .117. Later that night, at approximately 11:17 p.m., Whitfield signed a waiver of rights and gave a recorded confession to Nathan Hoda, an investigator with the Hancock County Sheriff's Department, and Matt Karl, also an investigator with the Hancock County Sheriff's Department.

## II. Trial

On September 9, 1991, the grand jury indicted Whitfield for the crimes of armed robbery, rape, and sexual assault. Although a copy of it is not included within the clerk's papers, Whitfield apparently had previously filed a request for psychiatric examination on June 4, 1991, which the trial judge granted on the condition that Whitfield or his family would pay for it. Whitfield's arraignment was scheduled for October 17, 1991; but the case was continued several times. The record contains nothing to indicate that Whitfield was ever formally arraigned on the three felony charges for which the grand jury had indicted him.

On November 6, 1991, Terry M. Haimes, Whitfield's counsel whom his family had employed to represent him, filed several motions, one of which was for a continuance from the date of November 18, 1991, for which date the case had been set for trial, and another of which was another motion for psychiatric examination "to determine [Whitfield's] ability to tell right from wrong and further to determine whether [Whitfield] is able to assist in his defense." Whitfield explained that he was without funds to pay for this psychiatric examination and that the State of Mississippi should pay for the examination. Whitfield's family had been financially unable to pay for the psychiatric examination which the trial court had ordered on or about June 4, 1991. The trial court sustained Whitfield's motion for a psychiatric examination by its order dated November 27.

After the trial court had continued the trial from November 18, 1991, until January 15, 1992, Whitfield again moved for a continuance on January 9, 1992, because his counsel had not yet received the report of a psychiatric examination of Whitfield which a Gulfport psychiatrist, Henry A. Maggio, M. D., had completed granted another continuance until January 21, 1992. Dr Maggio had evaluated Whitfield on December 30, 1991, but Whitfield's counsel did not receive a copy of Dr. Maggio's report until January 15. Dr. Maggio's summary of his report read as follows;

The diagnostic impression of Patrick Dudley Whitfield is that he suffers from an Antisocial Personality Disorder and Chronic Drug Abuse. Mr. Whitfield knows the difference [between] right and wrong; he is sane; he is competent to assist counsel in his defense; he is competent to stand trial; he understands the seriousness of the matter [with] which he is charged.

On January 22, 1992, the day that Whitfield's trial was scheduled to begin, he filed several motions. Because Whitfield and his counsel were dissatisfied with Dr. Maggio's conclusions, Whitfield moved to continue his trial so that his counsel and his family could secure a second psychiatric opinion. Whitfield also moved for a special venire pursuant to section 13-5-77 of the Mississippi Code. Finally, Whitfield asserted that he had not been informed until the date that trial was set that he would be tried on all three of the charges on which he had been indicted; and he moved to sever the rape and sexual battery charges so that they might be tried separately at a later date. The trial judge denied all three motions because he found them all to have been untimely filed.

Whitfield's trial was held on January 22 and 23, 1991. Included in the state's evidence against Whitfield were: (1) T. C.'s explicit testimony in which she described graphically his robbery and rape of her and his forcing her to commit fellatio on him at gunpoint, and her positive identification of Whitfield as the perpetrator of these crimes against her; (2) Whitfield's separate statement to officer Ladner who arrested him and his subsequent confession to investigators Hoda and Karl, (3) the pellet pistol which was recovered at Todd's Food Mart, and (4) the recorded videotape images from Todd's Food Mart camera which clearly showed Whitfield pointing the pistol at T. C., whose back was to the camera, while he robbed her of the contents of the store's cash register. Whitfield also testified, but the crux of his defense was not so much that he did not commit the crimes as it was that he was so drunk from alcohol and the ingestion of crack that he really didn't remember what he had done. Earlier the trial judge warned Whitfield and his counsel that voluntary intoxication was no defense to his commission of these three felonies under Mississippi law.

At the conclusion of the trial, the court instructed the jury that voluntary intoxication was not a valid criminal defense and refused the defense's voluntary intoxication and temporary insanity jury instructions. As we noted, the jury returned verdicts of "guilty as charged" on all three felonies and prescribed life imprisonment for the crime of rape. The jury did not impose life imprisonment for their conviction of armed robbery. Whitfield's retained counsel filed a motion for new trial on February 12, 1992; which the trial court heard on February 20, 1992. Although the trial judge announced at the hearing that he would deny Whitfield's motion for a new trial, he entered an order on the same day by which he reserved its ruling on that motion "until the cases pending in Pearl River County are disposed of."

In the meantime, Whitfield had filed a motion to appoint counsel for appeal and his affidavit to appeal in forma pauperis in the case *sub judice* on January 27. On January 30, the trial judge conducted a hearing on Whitfield's motion to appoint counsel, at which Whitfield's trial counsel represented him; but he deferred ruling on the motion for two weeks. The record reflects that the trial judge expressed his concern about the often repeated scenario in which a defendant employs counsel to represent him at trial, only to have the trial counsel "dump" his client on the public defender for the county, or other

court appointed counsel, for purposes of appealing because the trial counsel's fee for representing the defendant through his client's trial so impoverished the client that the client was unable to pay his retained counsel an additional fee for an appeal.

Six months later, on July 7, the trial court entered an order appointing attorney to represent defendant, in which that court found that Whitfield's trial counsel had been disbarred recently and that it was appointing James G. Tucker, III, Assistant Public Defender, to represent Whitfield in his appeal. In that order the trial court further provided that the newly appointed defense counsel, James G. Tucker, III, "shall inform the court whether of not he desires to amend the pending motion for a new trial and whether or not he needs the record transcribed for that purpose." The record contains nothing to indicate that Tucker, or his successor, William L. Ducker, amended the original motion for new trial or that either of them moved the court to transcribe the record prior to yet another hearing on Whitfield's motion for new trial which the trial court conducted more than ten months later on April 19, 1993. On that date, with Tucker then representing Whitfield, the trial court reheard the motion for new trial apparently because Whitfield's trial counsel had been disbarred by that time. This time, the trial court entered an order overruling motion for new trial dated April 19, 1993. The record contains no order which appointed Ducker to succeed Tucker as Whitfield's counsel for his appeal to the state's appellate courts, but Ducker appears as the counsel of record for Whitfield in this case.

## III. Issues

We quote verbatim from his brief to state the three issues which Whitfield presents for this Court's analysis and resolution:

Proposition I

> That the defendant was never arraigned on the charges on which he was tried and put to trial over his objection.

Proposition II

> That the defendant was denied a continuance in order to get a second opinion from a psychiatrist and was denied the opportunity to formulate an insanity defense.

Proposition III

> Was the defendant competently represented at trial?

## IV. Review, analysis, and resolution of the issues

**A.** Proposition I That the defendant was never arraigned on the charges on which he was tried and put to trial

over his objection.

The only references to Whitfield's arraignment on the three charges for which he was indicted are a notice of setting filed September 25, 1991, in the clerk's papers which states that this case had been set for arraignment on September 27, 1991, at 9:30 a.m., and another notice of setting filed October 14, 1991, in the clerk's papers which states that this case had been set for arraignment on October 17, 1991, at 9:30 a.m. There follow orders and other indicia of continuances, which we have already noted, until January 22, 1992, the date that the trial began. This court therefore concludes that Whitfield was never formally arraigned.

When the trial judge called this case for trial on January 22, Whitfield's counsel announced that he was ready "subject to the motions that we'd like to hear at this time." His counsel had filed them just a few minutes before the trial court had called the case for trial. The trial court proceeded to hear these motions, all of which it denied, primarily because it found that they had not been timely filed. After the trial judge had heard and denied these motions, he again asked Whitfield's counsel if he were ready; and he replied, "The defendant is ready, Your Honor." By 6:00 p.m. that afternoon, the jury had been selected, and the trial court recessed until 9:30 the next morning. When the trial court reconvened the next morning at 9:30, Whitfield engaged in a rather length colloquy with the trial judge, the subject of which was his supposed desire to plead guilty to the charges. The trial judge ended his conversation with Whitfield but gave him until 10:35 o'clock to confer further with his counsel pursuant to the previous colloquy. After Whitfield and his counsel conferred, the trial judge again inquired of both the state and Whitfield if they were ready to proceed, to which the assistant district attorney replied, "Yes, Sir." While Whitfield's counsel did not respond to the court's inquiry, he made objection to proceeding when the state began its opening statement.

Whitfield's first reference to his failure to be arraigned came after the trial judge dismissed the jury at 5:15 p.m. on the second day of trial, January 23. Then, Whitfield moved for a continuance on several grounds, one of which was that the trial judge had denied his motion for a special venire which he had filed only shortly before the trial judge had called the case for trial on the day before. The record contains the following argument which Whitfield's counsel made to correlate the error of failing to grant his motion for a special venire and the trial court's failure to arraign him:

> [T]he statute says that a request for a special venire shall be made after arraignment. At this morning, defense requested arraignment after the jury was seated, bur prior to any testimony, and the Court denied said motion for -- because failure to timely request arraignment, however, because the defense attorney announced ready for trial prior to making a request.

. . . .

> [w]e feel that the motion for special venire causes the request for arraignment to be timely on those grounds alone if for no other reason.

The trial judge responded to this argument as follows:

> There is no indication in any of the motions that you filed, the multiple motions that you filed, that asked the Court to arraign the defendant or brought to the Court's attention about arraignment. As I pointed out, under Rule 3.01, or something to that effect, when you announce ready for trial, you waive the issue of arraignment.

The record does not support Whitfield's counsel's claim that he had requested the trial judge to arraign his client before the trial began earlier that same day, which was the second day of trial. It only shows that he had renewed all the motions that he had filed the previous day and that the trial judge again denied them all.

In Mississippi an arraignment is not jurisdictional, and a defendant charged with a crime may waive arraignment when he or she participates in the trial without first having objected that he or she has not been arraigned. *Thomas v. State*, 26 So. 2d 469, 470 (Miss. 1946) In *Williamson v. State*, 512 So. 2d 868, 875 (Miss. 1987), the Mississippi Supreme Court reiterated the purpose of the arraignment process as follows:

> The arraignment proceeding . . . simply serves to inform the accused as to what charges are pending against him. The indictment is read and the accused enters a plea or a plea is entered for him.

The record in the case *sub judice* is devoid of so much as a hint that Whitfield did not know the nature of the three felonies for which the grand jury had indicted him. True, the record contains a motion to sever trial of the rape and sexual battery charges from the robbery charge on the ground that Whitfield did not know until the trial was set for the January, 1992, term that he would be tried simultaneously on all three charges. However, the very nature of this motion to sever establishes that Whitfield understood the nature of the charges for which he had been indicted and for which he was to stand trial.

Whitfield includes in his argument on this first issue his complaint that the trial judge erroneously failed to grant his motion for a special venire, which he filed within the hour before the trial court called this case for trial on the afternoon of January 22. However, Whitfield has not constituted this complaint as a distinct issue in his statement of issues as Rule 28(3) of the Mississippi Rule of Appellate Procedure requires. Rule 28(3) of the Mississippi Rules of Appellate Procedure provides: "Each issue presented for review shall be separately numbered in the statement [of issues]. No issue not distinctly identified shall be argued by counsel . . . ." Thus, this Court need not consider whether the trial court erred when it denied Whitfield's motion for a special venire, which he filed within an hour of the trial court's calling this case for trial.

Nevertheless, because Whitfield's counsel argued during the trial that his motion for a special venire implied a request for arraignment of his client since the motion for special venire could not be filed until after his client had been arraigned, we will review and resolve the matter of whether the trial

judge erred when he denied Whitfield's motion for a special venire. In *Porter v. State*, 193 Miss. 774, 10 So. 2d 377, 378 (1942), the Mississippi Supreme Court held:

> The purpose of the statute will be accomplished by holding, as the practice is, that a request for a special venire must be made when the court ascertains and announces that the case is ready for trial. When the appellant's counsel announced that he was ready for trial of the case and the court also announced that it was ready to proceed therewith, he should have requested the special venire, if he then desired it, or obtained permission from the court to request it at a later date. . . . When the court announced ready for trial, the request for a special venire became due without reference to the time then set for trial.

The supreme court quoted the foregoing with approval when it held that the trial judge did not err when he denied a defendant's request for a special venire because the trial judge found the motion to have been both untimely filed and thus untimely presented to him for his consideration in *Sharplin v. State*, 357 So. 2d 940, 941 (Miss. 1978). In *Sharplin*, the court had announced approximately two weeks prior to the first day of the term of court when it set the docket that the case was ready for trial; but the defendant waited to file his motion for a special venire until the first day of the term of the court. *Id.* Moreover, Sharplin's counsel did not call the court's attention that he had filed such a motion until the day of trial. *Id.*

In *Williams v. State*, 590 So. 2d 1374, 1378 (Miss. 1991) the Mississippi Supreme Court held that a motion for special venire filed the day of trial was untimely even though defendant's counsel argued that he did not know until about 4:00 p. m. the day before trial when he received copies of the state's instructions that his client had been charged with capital robbery. In *Williams*, the supreme court further opined: "Furthermore, while state law and Uniform Criminal Court Rule 4.10, Request For Special Venire, do not impose a deadline per se for the demand for a special venire, both the Rule and state law clearly anticipate that the demand will be made well in advance of trial." *Id.*

The foregoing cases clearly instruct this Court that Whitfield's motion for a special venire filed within an hour of the trial court's calling the case for trial on January 22, the date which the trial court had scheduled for one week before on January 15, was untimely. Moreover, Whitfield assigns no separate issues regarding an erroneous process of selecting the jury. He does not complain that the trial court erred in denying his challenges for cause or his peremptory challenges for *Batson* reasons. Therefore, the trial judge did not err when he denied Whitfield's motion for a special venire. We therefore resolve this first issue adversely to Whitfield and decline to put the trial judge in error for an alleged failure to arraign Whitfield when he repeatedly announced that he was ready for trial. We also affirm the trial court's denial of Whitfield's motion for special denial because we agree with the trial judge that its filing was untimely.

**B.** Proposition II That the defendant was denied a continuance in order to get a second opinion from a psychiatrist and was denied the opportunity to formulate an insanity defense.

When Whitfield's counsel argued for a continuance just before the trial was scheduled to begin on January 22, he advised the trial court that he had not received a copy of Dr. Maggio's report of his evaluation of Whitfield until the afternoon of January 15, and that he did not confer with his client about Dr. Maggio's conclusions, which we previously quoted, until late that afternoon. Whitfield sought this last-minute continuance so that he might pursue a more favorable evaluation by another psychiatric expert who would provide opinions more favorable to Whitfield's efforts to establish that he was insane when he committed the crimes for which he had been indicted or that perhaps he was not then capable of assisting his counsel in his defense against these charges. As we noted, the trial judge denied, repeatedly as the trial progressed, Whitfield's motion for a continuance. In his brief, Whitfield argues:

> Does Patrick Dudley Whitfield have a psychosis that greatly impaired his ability to determine right from wrong or is he just an alcoholic and drug addict? We'll never know unless this court reverses and remands for a new trial, which would allow Whitfield to develop such a defense. Since the trial court gave a "voluntary intoxication is no defense instruction and no defense instruction on mental defect appellant suggests the denial of opportunity to prepare an insanity defense becomes even more important.

Whitfield cites but one case to support his position on this issue, and that is *McLeod v. State*, 317 So. 2d 379, 391 (Miss. 1975), in which the Mississippi Supreme Court opined that where the defense of insanity or partial insanity at the time of the offense is involved, every act in the defendant's life relevant to showing his sanity or insanity at the time of the offense is admissible.

Our first reason to reject Whitfield's position on this second issue is that he failed to comply with then Uniform Criminal Rule of Circuit Court Practice 4.08's requirement that "[i]f a defendant intends to rely upon the defense of insanity at the time of the alleged crime, he shall, within the time provided for filing pretrial motions or at such other time as the court may direct, serve upon the prosecuting attorney and the clerk of the court a written notice of his intention to offer a defense of insanity." Unif. Crim. R. Cir. Ct. Prac. 408(2). The record in this case contains no such notice to the State that Whitfield intended to rely on insanity as a defense. Thus, his motion for continuance so that he might obtain further psychiatric evaluation to support a defense of insanity violated the mandate of Uniform Criminal Rule of Circuit Court Practice 4.08.

Our second reason to reject Whitfield's position is the nature of his own testimony at his trial. He testified that earlier in the afternoon of May 15, 1991, before he entered Todd's Food Mart he had smoked six rocks of crack and had consumed five quarts of beer at various establishments in Pearl River and Hancock Counties. Why Whitfield so testified remains unclear to this Court unless he thought that his intoxication from crack and beer would somehow ameliorate, if not excuse, his criminal behavior either in the eyes of the law or in the hearts of the jury. Whitfield's testimony established voluntary intoxication, not insanity, as the cause of his crime spree within the walls of Todd's Food Mart. Therefore, his motion for continuance so that he might establish a defense of insanity finds no support in the record.

Dr. Maggio's evaluation and report was the only evidence in the record relevant to Whitfield's sanity

and competency to stand trial, and they negated entirely the possibility that Whitfield was insane when he committed the crimes for which he was then being tried or that he was incompetent to assist his counsel in his defense against those charges. This Court recalls that when Whitfield first moved for a psychiatric evaluation in June, 1991, he had agreed to pay for it. The only reason that the trial court appointed Dr. Maggio on November 27 was Whitfield's representation that his family could not afford to pay for the evaluation; thus the State was compelled to pay for it. Nothing in the record indicates that Whitfield, who had been incarcerated since his arrest on these charges, or members of his family were able to pay for this second evaluation as of January 22, 1992.

Thirdly, a trial court has broad discretion as to whether to continue the trial of a case, and, unless we can say from facts shown in the trial that the trial court abused its discretion, or that an injustice has been done, we will not disturb a holding of the trial court denying such a motion. *Jackson v. State*, 254 So. 2d 876, 878 (Miss. 1971). We have recapitulated in detail the trial court's accommodation of Whitfield's endeavor to obtain psychiatric evaluation; and from our review of that chapter in this case, we can only conclude that the trial judge hardly abused his discretion in denying Whitfield's third motion for continuance. The trial judge granted the first two continuances to assure that Whitfield received the benefit of a psychiatric examination to which he was entitled. We affirm the trial judge's denial of Whitfield's motion for continuance which he made immediately before his trial began and resolve this issue against the Appellant.

**C.** <u>Proposition III</u> Was the defendant represented at trial?

Whitfield initiates his argument on this third issue as follows:

> This is a frequently assigned but only occasionally proved error. However, in the case at bar, the record is replete with fundamental mistakes on the part of [Whitfield's] trial attorney . . . . It is important to note that [Whitfield's trial attorney] was disbarred between the time of filing the motion for a new trial and the court's ruling on said motion. . . . If the trial court's error in not allowing the special venire and putting the defendant to trial over his objection without arraignment is held harmless error, then it must logically follow that Whitfield's trial attorney's failure to file a motion for special venire and motion for continuance until the date of the trial was incompetent.

Of course, this Court has already found that the record amply supported Whitfield's having waived arraignment by his proceeding to trial and that the trial court did not err by denying his motion for a special venire because his counsel's filing it on the day that the trial was scheduled to begin less than an hour before the trial judge called the case for trial was untimely. Even if our resolutions of these issues render Whitfield's trial counsel incompetent as his appellate counsel argues, Whitfield must further carry his burden of proving that the outcome of his trial would likely have been different but for what he terms "his trial attorney's incompetence."

As additional indicia of Whitfield's trial counsel's incompetence, his counsel on appeal assigns the

following: (1) the ineptitude of the content of the motion to suppress; (2) his declining to make an opening statement to the jury, which the Appellant describes as "always a mistake; (3) the brevity of his cross-examination of Whitfield's victim, T. C., which he claims could have been used to establish that the pistol was not a deadly weapon and that a "rape kit" used in T. C.'s examination following her attack failed even to indicate that she had engaged in sexual intercourse; (4) his calling two of the state's witnesses to make out a prima facie case for insanity or involuntary intoxication due to drug addiction; (5) his failure to call other witnesses such as Whitfield's former wife and some of his counselors who served Whitfield during his treatment for drug and alcohol addiction; (6) the trial court's granting of only one of the seven instructions which Whitfield requested; and (7) Whitfield's misplaced belief that "Whitfield could be saved in a mitigation hearing or second hearing. Somewhat parenthetically Whitfield's appeal counsel includes a diatribe against "plaintiff's lawyers, like {Whitfield's trial attorney] who take on a few criminal cases [but] are much more apt to show incompetence in areas such as the preparation of jury instructions." He also boosts public defenders like himself by writing that they "do this type of work on a regular basis and are pretty good at it."

With respect to claims of ineffective assistance of counsel, the Mississippi Supreme Court has stated:

> This Court set out the test and standards [for reviewing an ineffective assistance of counsel claim] in *Cabello v. State*, 524 So. 2d 313 (Miss. 1988):
>
> > In *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984), the United States Supreme Court established a two-prong test, required to prove the ineffective assistance of counsel: the defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense . . . . The burden of proof then rests with the movant . . . .
> >
> > Under the first prong, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." . . . . In short, defense counsel is presumed competent.
> >
> > Under the second prong, even if counsel's conduct is "professionally unreasonable," the judgment stands "if the error had no effect on the judgment." . . . . Consequently, the movant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." . . . There is no constitutional right then to errorless counsel . . . .

*Handley v. State*, 574 So. 2d 671, 683 (Miss. 1990) (quoting *Cabello v. State*, 524 So. 2d 313, 315 (Miss. 1988)).

We now consider each of the deficiencies in his representation of which Whitfield complains.

**1.** The ineptitude of the content of the motion to suppress

Regardless of the content of Whitfield's motion to suppress, it served the function of requiring the trial judge to conduct a hearing outside the presence of the jury to determine whether his confession to investigators Hoda and Karl and his statement to Waveland policeman Ladner were free and voluntary. The record indicates that Whitfield's trial counsel cross-examined all three of these officers, all of whom testified that either Ladner or Hoda had "*Mirandized*" Whitfield and that his statement had been free and voluntarily given. Whitfield countered with his testimony that the officers in whose custody he found himself in the Hancock County jail would not give him a cigarette until after he talked to Hoda, that these officers would not allow him to use the restroom until he had talked to Hoda, that he was scared, and that he was drunk. The judge found that Whitfield's statement to Ladner when Ladner arrested him and his confession later that night to investigators was free and voluntary and admitted them into evidence. Significant to this Court is Whitfield's appellate counsel's failure to raise the issue that the trial judge erred when he admitted Whitfield's statement to Ladner and confession to Hoda and Karl into evidence.

In *Goins v. People*, 431 N.E.2d 1069,1072 (Ill. App. Ct. 1981), the Illinois Appellate Court dealt with this issue. It opined:

> Counsel filed timely motions for discovery; to suppress defendant's confession; to substitute judges; and to suppress line-up identifications. Counsel filed a motion, before the second judge, to reconsider the earlier denial of the motion to suppress defendant's confession. Counsel also conducted extensive cross-examination of the State's witnesses at the pre-trial motions and at trial. His overall representation of defendant cannot be termed incompetent.

*Id.* We adopt the Illinois Appellate Court's holding to the facts of this case and determine that Whitfield's trial counsel's effort to suppress his client's statement and confession was not incompetent.

**2.** Failure to make an opening statement to the jury

The record reflects that Whitfield's counsel reserved making his opening statement when the trial began and that he waived making an opening statement after the State rested and before he presented his client's case. Other than applying the appellation of "mistake" to his trial counsel's decision not to make an opening statement, Whitfield's appellate counsel suggests no way that his trial counsel's failure to make an opening statement prejudiced him or would have likely resulted in a different outcome of his trial. In *Eakes v. State*, 665 So. 2d 852, 873 (Miss. 1995), the Mississippi Supreme Court wrote the following about a defense counsel's failure to make an opening statement:

> Even if counsel's decision to refrain from making an opening statement is deemed deficient performance rather than trial strategy, no effort is made to show how this "deficiency" prejudiced Eakes.

Again, based on the content of the record of the case *sub judice*, we find that Whitfield's trial

counsel's performance was not deficient even though he first reserved and then waived making an opening statement to the jury.

### 3. The brevity of defense counsel's cross-examination of T. C.

Whitfield's appellate counsel argues that Whitfield's trial counsel ought to have used more extensive cross-examination of T. C. to establish that the pistol was not a deadly weapon and that a "rape kit" used in T. C.'s examination following her attack failed even to indicate that she had engaged in sexual intercourse. As for whether the pistol was a deadly weapon, this Court notes that without objection by Whitfield, the trial judge granted Jury Instruction S-4, which read as follows:

> The Court instructs the Jury that it is a question of fact for you to determine whether the pistol in evidence claimed to have been used by Patrick Dudley Whitfield was a deadly weapon in the manner claimed to have been used in this case.

> A deadly weapon may be defined as any object, article or means which, when used as a weapon is, under the existing circumstances, reasonably capable of or likely to produce death or serious bodily harm to a human being upon whom the object, article or means is used as a weapon.

The introduction of the pellet pistol into evidence allowed the jury to determine whether it was deadly; and the trial judge granted a lesser offense instruction for the felony of simple robbery, should the jury have found that the pistol was indeed not a deadly weapon. T. C.'s testimony that she stuck the barrel of the pistol into Whitfield's stomach and tried to pull the trigger after she had gained control of it amply demonstrates to this Court that she trusted that it was deadly enough to repel her assailant.

The record is totally devoid of any reference to T. C.'s being examined by a health-care professional after Whitfield's attack or to a "rape kit." In *Burney v. State*, 515 So. 2d 1154, 1160 (Miss. 1987), the supreme court reminded the bar that the record must support the issue which an appellant presents to it for adjudication. The court wrote:

> This Court has stated that "[w]e have on many occasions held that we must decide each case by the facts shown in the record, not assertions in the brief . . . . And, further, "[t]o the appellant falls the duty of insuring that the record contains sufficient evidence to support his assignments of error on appeal."

*Id.* (citations omitted). This alleged deficit in Whitfield's trial counsel's performance is not supported by the record in the case *sub judice*, and we therefore reject it.

> ### 4. Counsel's calling two of the state's witnesses to make out a prima facie case for insanity or involuntary intoxication due to drug addiction

The record reflects that only Whitfield testified in his own behalf and that he called no other witnesses. Whitfield's counsel cross-examined the law officers who testified in support of the admission of Whitfield's statement and confession about Whitfield's sobriety when he was arrested, itself an indication of his effective representation of Whitfield. As with the "rape kit," the record is without support of this allegation of ineffective representation.

> **5.** Counsel's failure to call other witnesses such as Whitfield's former wife and some of his counselors for his treatment for drug and alcohol addiction

Whitfield does not suggest in his brief what evidence his former wife or his former counselors would have produced that would have materially undermined this Court's confidence in the outcome of this case at trial. And, of course, the record contains no proffer of their testimony. Thus, again the record does not support this allegation of deficient, or ineffective, representation by trial counsel. However, in *Pinkard v. State*, 694 S.W.2d 761, 762 (Mo. Ct. App. 1985), the appellant charged that his trial counsel had been ineffective because he had not called the appellant to testify at a hearing on a motion to suppress the appellant's confession. The Missouri Court of Appeals rejected this assertion by opining:

> [t]he selection of witnesses and evidence to be produced at a hearing is a matter of litigation strategy and professional judgment, and is an inadequate ground upon which to rule representation ineffective.

In the state of the record of the case *sub judice*, we concur with this quotation and hold that Whitfield's counsel's failure to call his former wife and earlier counselors was a matter of litigation strategy and professional judgment, both of which are "inadequate grounds upon which to rule representation ineffective."

> **6.** The trial court's granting of only one of the seven instructions which Whitfield requested

As we did when we considered Whitfield's argument that the trial court erred when it denied his motion for a special venire, we note that he has made no separate issue of the trial court's error in refusing any of the proposed instructions which his trial counsel offered, but which the trial judge denied. Instead, Whitfield argues:

> The jury was not given anything substantive about armed robbery as opposed to robbery. The jury was not instructed concerning the lack of physical or scientific evidence on rape. The record reveals that the court had to instruct the jury for the defendant . . . .

Our earlier discussion of the trial court's granting instructions on both armed robbery and simple

robbery and our reference to Instruction S-4 which instructed the jury that they were to determine whether the pistol was a deadly weapon belies Whitfield's statement that "[t]he jury was not given anything substantive about armed robbery as opposed to robbery." Whitfield does not suggest what instructions "concerning the lack of physical or scientific evidence on rape" would have been appropriate, but the State likely would have objected to them as comments on the weight of the evidence. We again refer to *Eakes v. State*, 665 So. 2d 852, 873 (Miss. 1995) to quote what our supreme court stated about another criminal defense counsel's failure to request certain jury instructions on behalf of his client in the face of his client's allegations on appeal that his representation had been deficient:

> Regarding the failure to offer an instruction on the theory of the defense . . . counsel offers only "[n]o instruction as to the theory of defense was made" . . . . Not only is neither prong of Strickland met, but counsel has not attempted to rebut the presumption that his performance falls within the broad spectrum of reasonable professional assistance. There is no error here.

*Id.* (citations omitted). Just as there was no error in *Eakes* which could be attributed to counsel's failure to request certain jury instructions, neither can this Court accept Whitfield's appellate counsel's allegation that his trial counsel was ineffective for failing to instruct the jury as he would now propose.

**7.** Whitfield's misplaced belief that "Whitfield could be saved in a mitigation hearing or second hearing."

The record reflects a colloquy between Whitfield's counsel and the judge about a "mitigation hearing," but if Whitfield's trial counsel had misled him about his being saved by such a hearing, the record contains nothing to support such an assertion. Whitfield cites no case to support his position on this particular sub-issue. In fact, because this was not a "death penalty" case which always involves a bifurcation of the issues of guilt and punishment, we do not understand what is meant by a "mitigation" hearing as Whitfield employs it. In the absence of authority and clarification by Whitfield, this Court can only conclude that were his belief thus misplaced, it did not demonstrate his counsel's ineffective representation before the trial judge and jury. Thus, we reject this seventh and last contention that Whitfield's trial counsel was ineffective.

**8.** The disbarment of Whitfield's trial counsel

The matter of the disbarment of Whitfield's trial counsel remains for our consideration. The record reflects that his trial counsel was disbarred sometime between the time he filed Whitfield's motion for new trial on February 5, 1992, and the time that the trial court conducted a second hearing on the motion for new trial on April 19, 1993, by which time James G. Tucker, III, represented Whitfield. Whitfield has failed to demonstrate any relationship between his trial counsel's disbarment and any specific aspect of his trial counsel's representation at trial. The record reveals no reason for Whitfield's trial counsel's disbarment. Whitfield has shown nothing to indicate that the outcome of his trial would have been any different even if his trial counsel had not been disbarred.

**9.** Summary of this Third Issue

Assuming *arguendo* that any one of these specific allegations of error actually did amount to a "professionally unreasonable" level of performance that met the first requirement of the *Strickland* standard, we nevertheless hold that Whitfield has failed to carry his burden of persuading us that his trial counsel's conduct deprived Whitfield of the effective assistance of counsel. With respect to each one of these seven supposed deficiencies of his trial counsel's conduct or decisions, Whitfield has failed to argue and thus to demonstrate how the outcome of his trial would have been any different without those deficiencies. Thus, Whitfield has completely neglected the second prong of the *Strickland* standard. Accordingly, for the reasons which we have previously recited, we find that Whitfield's trial counsel's representation was not so deficient as to constitute ineffective representation of Whitfield, and we therefore resolve this third issue against him.

## V. Summary

The purpose of arraignment is to advise the accused of the nature of the charges for which he or she is to be tried. Because it is not jurisdictional, arraignment can be waived. The record demonstrates that Whitfield conferred repeatedly both with the trial judge on a person-to-person basis and with his trial counsel, and that after those conferences, his trial counsel assured the trial judge on more than one occasion that he was ready to proceed. Thus, the record convinces this Court that Whitfield waived arraignment. The record further persuades this Court that in no way was Whitfield prejudiced by his waiver of arraignment. Among other reasons which persuade us that Whitfield was not prejudiced by the lack of an arraignment is his motion to sever the charges of rape and sexual battery for trial separate from the armed robbery charge. While the trial judge denied his motion to sever, about which Whitfield does not complain on appeal, the motion to sever could not have been made unless Whitfield already knew that he had been indicted for the felonies of armed robbery, rape, and sexual battery. He knew the nature of the charges on which he was to be tried.

The trial judge erred not when he denied Whitfield's motion for a continuance filed the day that his trial had been scheduled for one week to begin so that he might obtain a "second opinion" about whether he was insane when he entered Todd's Food Mart late in the spring afternoon of May 15, 1991, to rob, rape, and demean his victim, T. C. Whitfield failed to advise the State that he intended to rely on the defense of insanity as Uniform Criminal Rule of Circuit Court Practice 4.08 then required. Whitfield had already received the psychiatric evaluation to which he was entitled as an indigent; and there was no evidence that he or his family had become financially able to pay the expense of a second such examination as of January 22, 1992, after they had remained unable to pay for the first evaluation from June until November of 1991.

A criminal defendant's right to effective representation does not mean that he is entitled to representation by the reincarnation of Clarence Darrow, or "errorless counsel." Many of Whitfield's complaints about his trial counsel's deficiencies were utterly unsupported by the record, and other alleged deficiencies could hardly be deemed to have been errors. Given the clear and forthright testimony of T. C., the photographic evidence which the television camera provided, Whitfield's statement and confession, and the alert and effective response of law enforcement personnel which quickly netted Whitfield and preserved the pistol and cash found at Todd's Food Mart, Whitfield's burden of proving that the outcome of his trial would likely have been different became exceedingly

heavy; so heavy, in fact, that he failed to shoulder it. Thus, we resolved the issue of whether he was competently represented at trial against him. This Court affirms the trial court's judgment of Whitfield's guilt of the crimes of armed robbery, rape, and sexual battery and the respective terms of years and life to serve to which it sentenced him.

**THE HANCOCK COUNTY JUDGMENT OF APPELLANT'S GUILT OF ARMED ROBBERY, RAPE, AND SEXUAL BATTERY AND ITS SENTENCES OF TWENTY YEARS FOR THE CRIME OF ARMED ROBBERY, LIFE IMPRISONMENT FOR THE CRIME OF RAPE AS PRESCRIBED BY THE JURY, AND TEN YEARS FOR THE CRIME OF SEXUAL BATTERY, EACH TO RUN CONSECUTIVELY WITH ALL OTHERS, ARE AFFIRMED. COSTS ARE ASSESSED TO HANCOCK COUNTY.**

**FRAISER, C.J., BRIDGES, P.J., BARBER, DIAZ, KING, McMILLIN, PAYNE, AND SOUTHWICK, JJ., CONCUR. THOMAS, P.J., NOT PARTICIPATING.**